IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) EDDIE M. KELLY,<br><br>　　Plaintiff,<br><br>vs.<br><br>(1) K12 INC.,<br>(2) OKLAHOMA VIRTUAL CHARTER ACADEMY,<br>(3) AUDRA PLUMMER, and<br>(4) NICOLE ELLISON,<br><br>　　Defendants. | No. 6:17-cv-00453-RAW |

**DEFENDANT K12 INC.'S MOTION TO DISMISS
OR IN THE ALTERNATIVE STAY AND COMPEL ARBITRATION
AND BRIEF IN SUPPORT THEREOF**

Plaintiff Eddie M. Kelly entered into an arbitration agreement with Defendant K12 Inc. in which she agreed to arbitrate *all* claims arising from or related to her employment. Despite this express written agreement, Plaintiff filed a Complaint alleging discrimination and retaliation in the termination of her employment. Because she cannot overcome the express terms of the Agreement to Arbitrate, her claims belong in arbitration.

In 2010, the United States Supreme Court decided *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63 (2010), which reiterates the long line of cases from the Supreme Court upholding arbitration in the employment context. Among the core concepts addressed was the requirement that arbitration agreements be "enforce[d] according to their terms." *Id*. at 76. That means where, as here, an arbitration agreement covers a dispute, the resolution of that dispute is

exclusively committed to the arbitral forum. Accordingly, K12 respectfully requests that the Court dismiss the case and compel Plaintiff's claims to arbitration.[1]

## I. FACTUAL BACKGROUND

On August 6, 2012, at the beginning of her employment as a condition of her employment, Plaintiff executed an Agreement to Arbitrate with K12. *See* Declaration of Belinda Haagsma ("Haagsma Decl.") (Exhibit A) at Exh. A-1. The agreement expressly requires arbitration of all claims "arising from or relating to Employee's employment or the termination of Employee's employment." *Id.*, Exh. A-1, at ¶ 1. It expressly covers the discrimination and state law claims brought in Plaintiff's Complaint under Title VII, the Age Discrimination in Employment Act, 42 U.S.C. § 1981, and Oklahoma law. *See id.* Accordingly, this Court should dismiss (or stay) the case and compel Plaintiff's claims to arbitration. *See Rent-A-Center*, 561 U.S. at 72.

## II. AUTHORITIES AND ANALYSIS

It is well settled that an agreement requiring resolution of employment-related disputes through arbitration waives the employee's right to pursue those claims in a judicial forum. *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). As established below, Plaintiff's Agreement to Arbitrate any employment-related legal disputes bars her judicial prosecution of this action.

### A.  The Federal Arbitration Act Governs The Agreement To Arbitrate.

The Federal Arbitration Act ("FAA") applies to agreements "involving commerce." 9 U.S.C. § 2. Plaintiff's Agreement to Arbitrate expressly provides that it governed by the FAA.

---

[1] Consistent with LCvR 7.1(f), K12's counsel attempted to speak with Plaintiff about the arbitration agreement before filing the motion, but was unsuccessful. Her telephone number has been disconnected, and emails to her have gone unanswered.

Exh. A-1, ¶ 13 ("The parties agree that all controversies or claims arising out of or relating to this arbitration procedure, its interpretation, performance or breach, including without limitation the validity, scope, and enforceability of this Agreement, will be governed by the Federal Arbitration Act, 9 U.S.C. Section 1, et seq. . . . .").

In addition, K12 is a nationwide provider of education services. Haagsma Decl. ¶¶ 3-4. It is a Delaware corporation headquartered in Herndon, Virginia, and provides services to schools and school districts in all 50 states and the District of Columbia. *Id.* ¶ 4. In fiscal year 2017, it had $888.5 million in revenues. *Id.* ¶ 5. It is listed on the New York Stock Exchange. *Id.* Thus, Plaintiff's Agreement to Arbitrate is governed by the FAA.

In *Citizens Bank v. Alafabco, Inc.*, the Supreme Court provided guidance regarding the application of "involving commerce":

> We have interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce" – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. Because the statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce" – that is, "within the flow of interstate commerce."

539 U.S. 52, 56 (2003) (citing and quoting *Allied-Bruce Terminix Cos.*, 513 U.S. 265, 273-74 (1995); *Perry v. Thomas,* 482 U.S. 483, 490 (1987)). In *Alafabco*, the Alabama Supreme Court found that two debt restructuring agreements did not "involve commerce" because there was no showing "that any portion of the restructured debt was actually attributable to interstate transactions; that the funds comprising that debt originated out-of-state; or that the restructured debt was inseparable from any out-of-state projects." *Id.* at 55. In reversing the Alabama Supreme Court's decision, the Supreme Court said the court's commerce analysis was "misguided" and "adhere[d] to an improperly cramped view of Congress' Commerce Clause power." *Id.* at 56, 58. "Congress' Commerce Clause power 'may be exercised in individual

cases without showing any specific effect upon interstate commerce' if ***in the aggregate the economic activity in question*** would represent 'a general practice . . . subject to federal control.'"  *Id.* at 56-57 (emphasis added).  Because the debt restructuring agreements involved commerce "in the aggregate," the FAA governed.

In *HomeQuest Mortgage, LLC v. HRB Tax Group, Inc.*, the court applied *Alafabco*'s logic to conclude that the FAA governed the parties' dispute even though the contract involved only Kansas plaintiffs contracting with the defendant's in-state office for tax preparation services.  No. 14-CV-2008-DDC-KMH, 2014 U.S. Dist. LEXIS 107128, at *13 (D. Kan. Aug. 5, 2014).

> Congress' Commerce Clause power "may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity would represent a general practice . . . subject to federal control."  Defendant provides tax preparation services all over the United States.  The general practice of preparing federal tax returns for customers nationwide clearly impacts the national economy, which makes evident Congress' power to regulate that activity under the Commerce Clause.

*Id.* (quoting *Alafabco*, 539 U.S. at 56); *see also Rainbow Health Care Ctr., Inc. v. Crutcher*, No. 07-CV-194-JHP, 2008 U.S. Dist. LEXIS 6705, at *11 (N.D. Okla. Jan. 29, 2008) ("Read together, *Wickard*, *Katzenbach* and [*Alafabco*] stand for the proposition that the FAA reaches the broadest amount of commercial activity allowed by the Constitution—which can include a local business buying supplies from a company procuring those supplies from out of state.").

Because the FAA governs the Agreement to Arbitrate, the Supremacy Clause of the United States Constitution requires that Plaintiff's claims be arbitrated notwithstanding any contrary state law.  Under the Supremacy Clause, U.S. Const. art. VI, cl. 2, the FAA preempts all otherwise applicable or conflicting state laws.  *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting Section 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims

which the contracting parties agree to resolve by arbitration."). Indeed, the FAA is a "[c]ongressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of this Section [2 of the FAA] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Accordingly, any state law conflicting with the FAA violates the Supremacy Clause and is void.

   B.   **Federal Law Requires Arbitration Of Plaintiff's Claims.**

Section 2 of the FAA provides, in pertinent part, as follows:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA was enacted "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 321, 131 S. Ct. 1740, 1745 (2011). It requires courts to enforce arbitration agreements, reflecting a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22; *see also THI of N.M. at Hobbs Ctr., LLC v. Patton*, 741 F.3d 1162, 1165 (10th Cir. 2014). In *Circuit City Stores v. Adams,* 532 U.S. 105, 122-23 (2001), the Supreme Court noted the significant benefits of arbitrating claims in the employment context. These holdings were confirmed by the Court in *Concepcion*.

The "liberal federal policy favoring arbitration agreements" in effect creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within coverage of the [FAA]." *Perry v. Thomas*, 482 U.S. 483, 489 (1987). As such, the United States Supreme

Court has warned against judicial rulings designed to erode FAA precedence "by indirection." *Circuit City Stores,* 532 U.S. at 122.  Accordingly, it is the intent of Congress "to move the parties to an arbitrable dispute out of court and into arbitration ***as quickly and easily as possible***." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22 (emphasis added).  "Federal law simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) (internal quotations omitted).

*Concepcion* involved an agreement to arbitrate disputes in a consumer credit card agreement.  Claiming that the provision in the agreement that excluded class or representative claims was unconscionable, plaintiffs opposed a motion to compel arbitration under the FAA.  Both the district court and the Ninth Circuit held the agreement to be void as unconscionable under California's *"Discover Bank"* rule, "because AT&T had not shown that bilateral arbitration adequately substituted for the deterrent effects of class actions." *Concepcion*, 131 S. Ct. at 1745.  The Supreme Court struck down the *Discover Bank* rule "[b]ecause it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Concepcion*, 131 S. Ct. at 1753 (citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).  The central holding in *Concepcion* is that agreements to arbitrate must be enforced according to their terms.

Because Plaintiff's Agreement to Arbitrate is a valid and enforceable agreement and no grounds exist for its revocation, arbitration is warranted here.

    **C.**    **Doubts Are Resolved In Favor Of Arbitration.**

Under the FAA, an arbitration agreement must be enforced where a valid, written agreement exists and the claims made are within the scope of the agreement. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 221 (1985).  "[A]ny doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see also Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797 (10th Cir. 1995) (stating same). Indeed, district courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960); *see also Armijo*, 72 F.3d at 798 ("[W]e must interpret arbitration clauses liberally, and all doubts must be resolved in favor of arbitration."). Accordingly, this Court should resolve any doubts in favor of arbitration.

> D. **The Agreement To Arbitrate Is Valid And Enforceable And Covers Plaintiff's Claims.**

In ruling on a motion to compel arbitration, "[t]he court's role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted). "A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Optimum Lab. Servs. Ltd. Liab. Co. v. E. El Paso Physicians' Med. Ctr., Ltd. Liab. Co.*, No. CIV-17-411-R, 2017 U.S. Dist. LEXIS 94367, at *3 (W.D. Okla. June 20, 2017) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000)).

### 1.     The Agreement to Arbitrate is a valid and binding contract.

To determine whether there is a valid and enforceable arbitration agreement, the arbitration agreement must be examined under Oklahoma[2] state law regarding contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1293 (10th Cir. 2017). Under Oklahoma law, the essential elements of a contract are (1) parties capable of contracting; (2) consent; (3) a lawful object; and (4) sufficient cause or consideration. 15 Okla. Stat. § 2.

There should be no dispute that the parties to the agreement – Plaintiff Eddie Kelly and Defendant K12 – are capable of contracting and that the Agreement to Arbitrate that Plaintiff signed had a valid and lawful purpose. Ms. Kelly's consent is shown by the agreement bearing her signature[3] dated August 6, 2012, at the start of her employment. *See, e.g., Gonzales v. J.C. Penney Corp.*, No. 13-CV-86-GKF-TLW, 2013 U.S. Dist. LEXIS 60561, at *5 (N.D. Okla. Apr. 29, 2013) (finding consent by the plaintiff where an agreement bearing her signature was offered into evidence, even though the signature was electronic and the plaintiff claimed she did not remember signing it).

The agreement is also supported by adequate consideration. Not only is it adequate consideration that it was a condition of Plaintiff's employment, *see* Haagsma Decl. Exh. A-1, at

---

[2] The Agreement to Arbitrate contains a choice of law provision stating that Virginia law applies. *See* Haagsma Decl. Exh. A-1, at ¶ 13. "Arbitration clauses are favored in Virginia as a matter of law and policy," and it does not appear the elements of contract are different or that the analysis would yield a different result under Virginia law. *See, e.g., Giordano v. Atria Assisted Living, Va. Beach, LLC*, 429 F. Supp. 2d 732, 735 (E.D. Va. 2006); *Sanders v. Certified Car Ctr., Inc.*, 93 Va. Cir. 404, 405 (Va. Cir. Ct. 2016) ("Thus, any written arbitration agreement is presumed valid and enforceable under Virginia law, unless the objecting party is able to present grounds upon which the contract should be revoked or not enforced.").

[3] It does not matter that the copy of the agreement K12 has offered into evidence was signed only by Plaintiff. Even if the Statute of Frauds applied, it would require only that the agreement be "subscribed by the party sought to be charged." *See* 15 Okla. Stat. § 136.

¶ 1, but the mutual promises contained in the agreement provide adequate consideration.[4] *See Gonzales v. J.C. Penney Corp.*, No. 13-CV-86-GKF-TLW, 2013 U.S. Dist. LEXIS 60561, at *14 (N.D. Okla. Apr. 29, 2013) ("[S]ince both [parties] agreed to submit any employment-related claims to binding arbitration . . . , their mutual promises to arbitrate claims constitute adequate consideration to support the arbitration agreement. Further, courts have held that an agreement to arbitrate as a condition of employment constitutes adequate consideration to support an arbitration agreement.") (citation omitted) (citing *Thompson v. Bar-S Foods, Co.*, 174 P.3d 567 (Okla. 2007); *Pennington v. Northrop Grumman Space & Mission Sys. Corp.*, 269 Fed. Appx. 812, 819 (10th Cir. 2008)).

The instant arbitration agreement meets the requirements of Oklahoma substantive contract law and, thus, is a valid and enforceable agreement by Plaintiff to arbitrate her claims.

## 2. The Agreement to Arbitrate covers the claims in the Complaint.

Plaintiff's claims against K12 unambiguously fall within the scope of the Agreement to Arbitrate. Specifically, the agreement applies to any claims that arise from "Employee's employment or the termination of Employee's employment" and expressly covers tort claims, claims under state law, and employment discrimination claims. Haagsma Decl., Exh. A-1, at ¶ 1. In her Complaint, Plaintiff makes claims of race and age discrimination in the termination of her employment, unequal terms or conditions of employment, and retaliation. Complaint (Doc. No. 2), at p. 4. She invokes Title VII, the Age Discrimination in Employment Act, 42 U.S.C. § 1981 (among other of the Civil War era statutes), and Oklahoma state law. *Id.*, p. 3. As the Court held in *James v. Bobrick Washroom Equipment, Inc.*, broad language in an arbitration agreement

---

[4] The agreement states that it is in consideration of the parties' "mutual promises and undertakings . . . , the offer of employment, and/or salary or wage increase provided to Employee by K12 contemporaneously herewith . . . ." Haagsma Decl., Exh. A-1, at ¶ 1. Plaintiff signed the agreement at the inception of her employment in August 2012 as part of the terms of her employment. *Id.*, at ¶¶ 6-7.

covering all issues arising out of employment encompasses not only all claims arising out of employment, but also those with any connection to the employment relationship, and clearly encompasses discrimination claims based on federal statutes and state public policy. No. CIV-09-145-KEW, 2010 U.S. Dist. LEXIS 8840, at *6 (E.D. Okla. Feb. 1, 2010); *see also Anderson v. Regis Corp.*, No. 05-CV-646-TCK-SAJ, 2006 U.S. Dist. LEXIS 31302, at *13 (N.D. Okla. Apr. 26, 2006) ("Agreements that require arbitration of statutory claims, including the Title VII claims at issue here, are also generally enforceable.").

Even though Plaintiff has sued three other defendants in addition to K12, it is clear from the narrative she provides in her Complaint, *see generally* Exhibit 1 (Doc. No. 2-1), that all of her claims arise from her employment relationship. The Supreme Court has recognized that all such claims are subject to arbitration even if the other parties sued are not parties to the arbitration agreement:

> Respondents argue that, as a matter of federal law, claims to arbitration by nonparties are not "referable to arbitration *under* an agreement in writing," 9 U.S.C. § 3 (emphasis added), because they "seek to bind a signatory to an arbitral obligation *beyond* that signatory's strictly contractual obligation to arbitrate," Brief for Respondents 26. Perhaps that would be true if § 3 mandated stays only for disputes between parties to a written arbitration agreement. But that is not what the statute says. It says that stays are required if the claims are "referable to arbitration under an agreement in writing." If a written arbitration provision is made enforceable against (or for the benefit of) a third party under state contract law, the statute's terms are fulfilled.

*Arthur Andersen, LLP v. Carlisle,* 556 U.S. 624, 631 (2009) (emphasis in original); *see also Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993) ("Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (holding that a party cannot circumvent promise to arbitrate by simply naming nonsignatory parties as defendants in his complaint because "the effect of the rule

requiring arbitration would, in effect, be nullified" by such an action); *Letizia v. Prudential Bache Secur., Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986) (concluding arbitration clause was applicable to individual nonsignatory employee-defendants because their "allegedly wrongful acts" arose out of their work for the signatory employer).

The existence of a valid and enforceable arbitration agreement that covers the subject of this dispute therefore cannot be denied.

### E.      The Court Should Dismiss Plaintiff's Complaint.

Where some, but not all, of a plaintiff's claims are arbitrable, a stay of judicial proceedings pending arbitration is appropriate. *See* 9 U.S.C. § 3. However, when **all** of a plaintiff's claims are arbitrable, a stay is not necessary, and the legal action may be dismissed. Indeed, when a stay is formally sought, a stay is the proper course of action. *See Adair Bus Sales v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994). "When, however, the party seeking to compel arbitration requests the court for dismissal, and there is no evidence in the record of any party requesting a stay, it is not error for the district court to dismiss the case." *Laurich v. Red Lobster Rests., LLC*, No. CIV 17-0150 JB/KRS, 2017 U.S. Dist. LEXIS 185211, at *32 (D.N.M. Nov. 8, 2017) (citing *Armijo*, 72 F.3d at 797). Because the arbitration will resolve the entire matter, dismissal is appropriate. In the alternative, the Court should stay the judicial action pending arbitration. *See* 9 U.S.C. §§ 3, 4.

### III. CONCLUSION

Plaintiff agreed to arbitrate disputes arising out of her employment. The Agreement to Arbitrate is enforceable, and Plaintiff's claims fall within the scope of the agreement. The Court should dismiss (or stay) the case and order Plaintiff to arbitration. In the event the Court denies K12's motion, K12 respectfully requests 14 days to file a responsive pleading, consistent with Rule 12(a)(4).

/s/ Eva C. Madison
Eva C. Madison (OBA#18103)
Littler Mendelson, P.C.
217 E. Dickson St., Suite 204
Fayetteville, Arkansas 72701
Telephone:  479.582.6100
Fax:  479.582.6111
emadison@littler.com

Attorney for Defendant K12 Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2018, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

[None]

I further certify that on this same date, I mailed the foregoing document by United States Postal Service to the following non CM/ECF participant:

Eddie M. Kelly, *Pro Se*
814 Carbon Ave.
Hartshorne, OK 74547

/s/ Eva C. Madison

Firmwide:152524533.1 999999.2271

-12-