Pro Se 7 (Rev. 12 16) Complaint for Employment Discrimination

UNITED STATES DISTRICT COURT
for the
Eastern District of Oklahoma
Civil Division

FILED
FEB 20 2018
PATRICK KEANEY
Clerk, U.S. District Court
By_____ Deputy Clerk

Eddie M. Kelly )
) Case No.: CIV 17-453-RAW
)
Plaintiff, )
) Response to Motion
) to
vs. ) Compel Arbitration
)
K12 Inc. Principal )
OVCA, Agent )
Audra Plummer, Agent )
Nicole Ellison, Agent )
Defendant )

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION;**

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pro se Plaintiff Eddie Kelly files this Response to Defendant's Motion to Compel Arbitration, Dismissal, and Memorandum of Points and Authorities and would show the Court as follows:

**INTRODUCTION**

1. This is a civil action by Pro se Plaintiff alleging wrongful termination based on race, age, retaliation, disparate treatment and harassment against Defendants K12 Inc.(K12), Oklahoma Virtual Charter Academy (OVCA) and K12's agents Audra Plummer, Nicole Ellison. Plaintiff challenges the Motion for Dismissal, and the enforceability of the Arbitration Agreement in its entirety, including the clause(s) and each provision on the grounds of fraud as Defendant intentionally misrepresented material facts. Plaintiff entered the Agreement after being told, over the telephone, the job was with OVCA that K12 managed such things as recruitment, curriculum, and the online platform for access to the virtual service. This was repeated by onsite officials. The Agreement and other paperwork, from the recruiter, was emailed August 6, 2012, at 11:27 PM requesting it be returned on the same date. A time stamp verifies a fax to K12 at 22:34 PM (08/06/12). Consequently, below Plaintiff's signature on the Agreement, emailed from Defendant's attorney, January 17, 2018, Plaintiff lists K12 and OVCA as bound employers. K12 nor

Response to Motion to Compel Arbitration-1

OVCA added their signature in the space provided for bound employer nor disputed Plaintiff understanding.

2. Due to family illness, Plaintiff was seeking remote employment. Due to a continuing teacher shortage in Oklahoma Defendants needed teachers with Plaintiff's credentials as enrollment went from approximately 1000 students to 2,800, school year 2011 and 2012. OVCA was experiencing a high teacher turnover, D's and F's on the State Report Card, 21% graduation rate, and listed on the State Improvement List for failing schools. As a result, OVCA received federal funds to initiate a Title I reading and math program for at-risk students. Plaintiff signed an agreement with OVCA pledging to implement and maintain instruction for that student demographic and OVCA paid Plaintiff bonuses to perform supervisory duties as a state test coordinator and recruiter. This arbitration agreement (AA) is not a consent, but coercive as it was made on the representation that Plaintiff would be a Title I Reading Specialist as outlined under the *Elementary and Secondary Education Act of 1965*, as amended, Title 1, Part A; 20 U.S.C. 6301-6339, 6571-6578 for reading remediation with a caseload of at least 50 students. Instead, Plaintiff had a teacher-student ratio of 1:350+ including special education and disabled students in violation of state and federal regulations to keep costs down while increasing shareholder profit. Plaintiff did not intend to sign an agreement to be complicit in defrauding Oklahoma students, parents, or state and federal governments.

3. When Plaintiff complained the result of the misrepresentation created a discriminatory work environment that lead to an unverified parent complaint alleging Plaintiff was abusive to students and termination March 8, 2016. This is damaging to Plaintiff's personal and professional reputation and loss of ability to participate in a higher education loan forgiveness program for teachers that work with at-risk students in a federally funded schools for at least five years, maintaining a successful performance rating as required by federal regulations. But for, discrimination et al Plaintiff would have achieved that goal. Further still, Plaintiff was fraudulently told to rely on the employee performance appraisal system as job security. Plaintiff's performance was rated "highly effective" with annual bonuses. Instead Defendants' misrepresented Plaintiff's performance as a teacher with a prolonged history of problems. Defendant's agents retaliated and ethically disparaged Plaintiff's character.

4. This Arbitration Agreement also seeks to prevent Plaintiff's access to Discovery, the court and jury trial by placing Plaintiff in an untenable situation under AAA rules. Plaintiff seeks restitution from Defendants for violations of misrepresentations, failure to follow the Oklahoma Charter School Act, and material omissions alleged in the Complaint. Plaintiff also seeks injunctive relief under Oklahoma and federal legal Remedies. Defendant K12 has a pattern and practice of illegal behavior and fraud

perpetrated on taxpayers, school districts, through their apathy, teachers, and above all, innocent children who rely on OVCA for a quality education.

5. <u>**OVERVIEW OF DEFENDANTS' FRAUDULENT PRACTICES**</u>

- Defendant's website praises a superior curriculum. The National Collegiate Athletic Association did not accept coursework completed by student athletes at OVCA and two dozen K12 schools meaning students cannot attend any Division I or Division II colleges or Universities.
- OVCA State Report Card consistently lists D's and F's for student achievement
- Comparison of graduation rate between the state 82.7% OVCA 21%
- 2012, Florida's Department of Education launched an investigation of K12 Inc. over allegations that the company was using uncertified teachers and had asked employees to cover up the practice, according to *NPR*
- 2012, Class-action lawsuit in US District Court in Alexandria, VA alleging violation of securities law by making false statements to investors about students' poor performance on standardized tests, boosting enrollment and revenues through deceptive recruiting practices.
- 2012, the Georgia Department of Education issued a report finding that K12 Inc.'s Georgia Cyber Academy "has repeatedly failed to comply with the federal Disabilities Education Act and has violated students' civil rights by failing to provide services required by the law."
- 2012, K12 Inc. Colorado Denied Charter School Authorization for Sub-Par Performance, Forced to Pay Back $800,000 to State
- 2012, Wisconsin School District Drops K12 Inc. for Prioritizing Profits Over Students
- 2015, K12's largest revenue providing school, the Agora Cyber Charter School, decided against renewing its Managed Public School Contract with K12, which was scheduled to terminate on June 30, 2015. Although K12 acknowledged in its public filings that a change in its contract with Agora could adversely affect the company's business, financial condition, and results of operation, K12 concealed from investors Agora board's decision not to renew the contract
- 2016, Lawsuit filed in US District Court Northern District of CA alleges (1) materially false and misleading statements, omitted materially adverse facts about students' academic progress, parent satisfaction, their graduates' eligibility for University of California and California State University admission, class sizes, the individualized and flexible nature of K12's instruction, hidden costs, and the quality of the materials provided to students; (2) that K12 submitted inflated student attendance numbers to the California Department of Education in order to collect additional funding; (3) that, as a result of the aforementioned practices, the Company was open to potential civil and criminal liability; (4) that the Company

Response to Motion to Compel Arbitration-3

would be forced to end these practices, which would have a negative impact on K12's operations and prospects; and (5) that, as a result of the foregoing, Defendants' statements about K12's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis. As a result of defendants' alleged false and misleading statements, the Company's stock traded at artificially inflated prices during the Class Period.

- Lawsuit-Bureau of Children's Justice and False Claims Unit of the California Department of Justice with K12 Inc. and the 14 affiliated non-profit schools that it managed, over alleged violations of California's false claims, false advertising and unfair competition laws
- Lawsuit 2014-The Oklahoma Firefighters Pension Fund lost hundreds of millions of dollars through an investment with K12.

## ARGUMENT AND AUTHORITIES

6. Where a party with intent to induce another to enter into a contract makes positive assertion, which is material, in a manner not warranted by his information, or where he is not shown to have reasonable grounds for believing it true where the assertion so made is not true, even though believed by the party making it, he is guilty of actual fraud. *Farrar v. Chitwood*, 282 P.2d 729 (Okla. 1955).

## PROVISION: THE ARBITRATION AGREEMENT

7. Defendant K12 seeks to make its Arbitration Agreement retroactive as Plaintiff had already begun employment before any knowledge of an agreement existed and before the mandatory agreement was signed August 6, 2017. Parties had already agreed to the terms of employment as confirmed by Plaintiff's reporting to work August 1, 2012. Regarding Plaintiff's constitutional claims under *Title VII of the Civil Rights Act of 1964 as amended, and the Age Discrimination in Employment Act of 1867 as amended*, Defendant is requiring Plaintiff to relinquish constitutional rights to the courts and jury through fraudulent misrepresentation. Plaintiff was told the agreement was based on Defendant's proprietary rights and confidentiality regarding curriculum and other such matters pertaining to its online platform which is a materially false inducement. However, flaws exist in the scope and nature of the agreement based on its presentation and reliance on statutes, regulations and understanding of Oklahoma Charter School Act and provisions.

8. The FAA concluded arbitration arises from the agreement of the parties to submit to private dispute resolution. Courts will not require arbitration when the parties have not agreed to it because "arbitration is a matter of consent, not coercion." *Farrell v Concept Builders, Inc.*, 2009 OK CIV APP 34, ¶ 7, 208 P.3d at 944-45 (quoted citation omitted)

## CONCEALMENT OF ARBITRATION AGREEMENT

9. Among the fraudulent misrepresentation was the concealment of the agreement until several hours before it was due. During midnight hours Plaintiff was forced to find means to fax the document back to Defendant, or relinquish employment already in progress. Emailing an agreement at that hour intentionally drew emphasis away from the arbitration provision, which was not explained what the agreement entailed beyond the Defendant's protection of its products and brand. This is antithetical to the intent of the FAA which is to ensure agreements to arbitrate are *valid, irrevocable and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract (*9 U.S.C.S.§2*). The FAA provides that the court should determine if the dispute is referable to "arbitration" before staying litigation or compelling arbitration.

**Signatures**

10. Plaintiff's signature on the agreement cannot be presumed that knowledge of its contents present an inescapable route to liability under the contract. In response, this presumption can be overcome by a showing of fraud, *Dusbabek v. Bowers, 1934 OK 594, 173 Okla. 53, 43 P.2d 97*. Section 4 of the FAA demands a claim of fraud in the inducement of the arbitration agreement be submitted to the court. The omission of K12's signature indicates a non-agreement to the terms set forth in this procedure. Since both parties did not sign, but, as indicated on the form were bound, there is no mutuality of understanding that both agree to give up constitutional or statutory rights they may possess to have covered claims decided in a court of law before a judge and jury and receive relief for damages.

11. The omission of K12's signature indicates a non-agreement to the terms set forth in this procedure. Since both parties did not sign, there is no mutuality of understanding that both agree to give up constitutional or statutory rights they may possess to have covered claims decided in a court of law before a judge, jury and recovery of damages.

## PROVISION: CLAIMS EXCLUDED FROM AGREEMENT

12. When determining whether claims are excluded from the agreement, the US Supreme Court's conclusion in Granite Rock arbitration is "strictly a matter of consent." A court, and not an arbitrator, is required to address a party's argument that no agreement containing an arbitration provision was ever reached. The test to determine if a claim falls within the scope of an arbitration clause is to determine if the factual allegations 'touch matters' governed by the parties' agreement, not what claims the Agreement specifically mentions (*GRANITE ROCK CO. v. TEAMSTERS ( No. 08-1214 ) 546 F. 3d 1169*, reversed in part, affirmed in part, and remanded.). Matters excluded from the agreement are within the context of Oklahoma school board governance compliance.

## OVCA LIABILITY

13. Defendant states within the scope of the agreement..."and any other law or regulation relating to employment, employment discrimination, employee wages, or benefits, except as provided in Paragraph2..." Provision 1 of the Arbitration Agreement, or clause, is inconsistent with the Oklahoma Charter School Act regarding special education and disabled students. Issues arising out of this complaint are disputed material facts regarding violations of special education and Title I services pertaining to programs that OVCA is contractually and statutorily mandated to comply. When Plaintiff raised issues of disparate treatment, discrimination and retaliation in its initial EEOC charge against OVCA, K12 assumed the responsibility as Respondent to shield OVCA from liability. The Oklahoma Charter School Act states it can make contracts, sue and be sued (*70 O.S. §3-134*). In contradiction, K12 posts the following policy position in contractual relations which is beyond the scope of this agreement:

    - **K12-SPECIAL EDUCATION AND DISABILITIES:** If Customer is a public entity(OVCA) receiving federal Title I funds, Customer agrees that it is the Local Educational Agency responsible for the provision of special education. The provision of special education, the creation, implementation or provision of Individualized Education Programs, the provision of reasonable accommodations or any services of any nature under the Individuals with Disabilities Education Act, the Americans with Disabilities Act, section 504 of the Rehabilitation Act or any similar law, whether federal, state or local are not services provided under this Agreement. Notwithstanding the forgoing, during the Period and Renewal Period (if any) of this Agreement, K12 will discuss, formulate and make adjustments and accommodations in furtherance of IEPs or reasonable accommodations established by Customer, but solely to the extent that K12 may do so without incurring direct or indirect costs.

    - As K12 notes in its annual report, "most of (its) revenues depend on per pupil funding amounts and payment formulas" from government contracts for virtual public charter schools and "blended schools" (combining online with traditional instruction) among other products. In 2014, K12 Inc. took in $919.6 million from its business, with $1.13 million as a federal contractor.

14. Although, an Appeals Tribunal found the charges Defendants alleged against Plaintiff were unsubstantiated, this comingling of services create a dispute which conflicts with the goals of the arbitration agreement. The arbitration clause refers to disputes not existing when the agreement is executed. Consequently, K12 was unable to define the subject matter pertaining to state and federal programs regarding liability for the discriminatory treatment of Plaintiff within the context of Title I and special education programs. There was no waiver of rights to have this matter resolved by a court and jury as this court has jurisdictional powers over all claims embodied in Plaintiff's petition.

15. Pursuant to *70 O.S. §3-136(A) (7)* all state and federal laws relating to education of special education and disabled students must adhere to (*20 U.S.C. §1400, Sec 504-29 U.S.C. §703, Title II*, Policies & Procedures in Oklahoma State Depart of Educ.

16. Pursuant to *70 O.S. §3-135(B)* the charter school contract for services with teachers and school personnel shall comply with all federal regulations and state and local rules and statutes relating to health, safety, civil rights and insurance. A charter school shall be considered a school district for purposes of tort liability under The Governmental Tort Claims Act (*70 O.S. § 3-136A (12)*). Statutorily charter schools shall provide for a governing body which shall be responsible for the policies and operational decisions of the charter school (*70 O.S. §3-135*). The OVCA board of education does not have authority to transfer control of these responsibilities to a third party (*70 O.S. §3.135*).

17. Consequently, binding arbitration is provided for in the Charter School Act (§3-134(F), but it is legally impossible for it to take place in the absence of rules and regulations governing the procedure provided by the Dispute Resolution Act which is referenced in the Charter School Act. That framework does not contain provisions for binding arbitration (*Pentagon Academy v. ISD No 1 of Tulsa County*, 2003 OK 98, 82 P. 3rd 587). The Oklahoma Charter School Act is not in violation of the doctrine that the Oklahoma Legislature will not delegate its powers, as it retains authority to provide for a free public education as required by Oklahoma Constitution art. XIII, §1, and as the Act contains specific statutory standards for charter schools. *August 22, 2007 (AG Op. No. 07-23)*.

## PROVISION: PRE-ARBITRATION CONFLICT RESOLUTION

18. This mandatory multi-tiered pre-arbitration provision is confusing, lacks scope and clarity regarding its jurisdiction, admissibility, validity and enforceability. Consequently, Provision 3 means Defendant has memorialized a discriminatory "Do what I say, not what I do" pattern and practice. The Court finds persuasive the reasoning from the established line of cases "a mere agreement to agree" is unenforceable for indefiniteness where material terms are left open for future resolution. *Joseph Martin, Jr. Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 417 N.E.2d

### Employee Handbook

19. Defendant refused to follow its policies which were consistent with statutory requirements. Disregard for its own policies when Plaintiff made complaints of specific issues that were address in the Handbook, for which Plaintiff was accused, that Defendant ignored. Defendant gave a non–discriminatory reason for Plaintiff's termination March 8, 2016, but was rebutted during an Appeals Hearing Tribunal and with EEOC providing a Right to Sue. Plaintiff was terminated for an unverified parent complaint, but White employees were neither disciplined nor terminated. Inconsistency

in the implementation of Employee Handbook policies shows disparate treatment in violation of EEO Policies. In *EEOC v. Kohler Co.* the 8th Circuit Court of Appeals reversed a summary judgment in favor of the employee because the employer failed to enforce its disciplinary policies uniformly.

20. Defendant made reference to the Arbitration Agreement in the Employee Handbook in the same paragraph stating nothing in K12's policies is intended to create a contract of any sort of the part of K12 or any of its employees, officers, directors, or agents for employment in other than an at-will status. On January 7, 2016, the New Jersey Appellate Division affirmed the denial of an employer's motion to compel arbitration of a former employee's age discrimination and wrongful termination lawsuit because the Employee Handbook, within which the arbitration policy was contain eement and waiver of the right to sue did not constitute a contract binding on the employee. *Morgan v. Raymours Furniture Company, Inc.*

**Federal Contractor**

21. The Obama Executive Order #13683 appeared in the Federal Register December 16, 2014, two months before Plaintiff filed an EEOC charge of discrimination, February 2015. This Order directs companies with federal contracts of $1 million or more not to require their employees to enter into pre-dispute arbitration agreements for disputes arising out of Title VII of the Civil Rights Act (except when valid contracts already exist). This builds on a policy already passed by Congress and successfully implemented at the Department of Defense, the largest federal contracting agency. Despite repeated attempts to file an internal complaint, Defendant was not responsive. Defendant further rejected EEOC attempts for mediation. Contracting Party shall have exhausted the domestic administrative review procedure specified by the laws and regulations of the Contracting Party, before submission of the dispute to the arbitration procedure

**PROVISION: TIME LIMIT FOR INVOKING ARBITRATION**

22. Oklahoma's statutes of limitation provide that "[c]ivil actions can only be commenced within the periods prescribed in this article …". 12 *Okla. Stat. §92*. The question is whether arbitration is a "civil action." The Oklahoma Supreme Court defined the term "action" in *Greco v Foster, 1954 OK 43, 268 P.2d 215* to be "a proceeding in court by which one party prosecutes another party for the enforcement or protection of a right …" Under this definition the statutes of limitation would not apply to claims in arbitration since arbitrations are not a "proceeding in court." If the parties to an arbitration agreement intend to place a time limit on bringing claims in arbitration, the time limit should be set forth in the arbitration agreement. **The time limit for Defendant to compel arbitration has expired**.

23. Parties agreed to the following terms: If the claim cannot be resolved through the informal Conflict Resolution procedure, either party wishing to invoke arbitration under this Agreement must do so within:
    1. 12 months of when the cause of action arose. 180 Days to file charge with EEOC September 1, 2016

2. Within the time period provided under law for commencement of an action in a court of law, whichever expires earlier. 90 days after receiving the EEOC Right to Sue in District Court December 12, 2017.

**PROVISION: ARBITRATION PROCEDURES**

24. **Since Plaintiff alleges the Arbitration Agreement was based on fraud, there are ethical, moral, and social justice considerations.**
    - *9 U.S.C. 11*. Unlike most matters for arbitration, the parties cannot contract for more robust appellate review. *Hall Street Assocs. L.L.C. v. Mattel, Inc.*, 522 U.S. 576 (2008). Plaintiff has limited resources and would be disadvantaged with the American Arbitration Procedures (AAA). Moreover, the limited access to discovery, limited applicability of the rules of the evidence, denial of a dispositive motion and limited appeal rights. Plaintiff's timely access to legal materials ensures that legal principles will be misunderstood and misapplied in an AAA environment. These factors are highly consequential.
    - Failure to disclose a conflict, or an arbitrator's decision to continue to serve after the arbitrator discloses the information and a party timely objects, can result in vacatur of the award if the facts establish evident partiality by the arbitrator. *ORUAA §1863C* presumes evident partiality if a neutral arbitrator fails to disclose "a known, direct and material interest in the outcome of the arbitration proceeding or a known, existing and substantial relationship with a party."

**PROVISION: GOVERNING LAW**

25. Under the FAA, the "interpretation of an arbitration agreement is generally a matter of state law," *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp., 559 U.S. 662, 681 (2010)*, and since the arbitration agreement in this case was signed in Oklahoma by an Oklahoma resident, and in the context of an Oklahoma publicly fund school, the parties should agree that Oklahoma law and not the law in the Commonwealth of Virginia would govern any contract dispute.

**CONCLUSION**

26. This arbitration agreement is about employment discrimination, not exclusively about arbitration, Therefore, the arbitration in pertinent parts and holistically is unenforceable. When it was discovered Plaintiff was African American, Defendant made racist comments, harassed, issued written warnings with misrepresentations, inflicted different treatment than that of White teachers. The scope of the remedies, pre-arbitration clause, and legal citations focus on K12 and omits the role OVCA, who is enjoined in Plaintiff's petition, played a substantial role in the denial of human rights, civil rights, labor rights and economic rights. Defendants seeks to intertwine business practices into the classroom. Defendant contend that the arbitration provisions should be interpreted under the Commonwealth of Virginia. However, under applicable choice of law principles, Oklahoma education Statutes apply to the arbitration provision(s). In undertaking a choice of law analysis, federal courts can apply the choice of law rules of

the state in which they are located, *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 937 (9th Cir. 2001).

27. Moreover, a court first must determine as a threshold matter whether the chosen state has a substantial relationship to the parties or their transaction or whether there is any other reasonable basis for the parties' choice of law. If either of these tests is satisfied, then the second inquiry is whether the chosen state's law is contrary to a fundamental policy of Oklahoma, its children, parents, teachers and taxpayers. Courts throughout the country have identified Defendant's practices regarding its employees and the children they are hired to serve with "deception" and a sub-standard education. However, their shareholders are pleased with the return on their investment. If such a conflict with the Commonwealth law is found, the court must determine whether The Commonwealth of Virginia has a materially greater interest than the state of Oklahoma in the determination of this issue regarding the interests of a teacher's performance with special needs children that was rated highly effective, not just at OVCA, but throughout a long professional career of service to disadvantaged children; Plaintiff asks the Court to weigh Plaintiff's Petition against Defendants who made misrepresentations in the formulation of this agreement, and to EEOC a federal agency.

28. Even if the arbitration' Agreement provision was valid and enforceable, Defendants' Motions to Dismiss and compel should still be denied because Plaintiff's claims are not within the scope of the arbitration provision. Plaintiff's claims arise from the Charter School Act and the responsibilities of the governance board to teachers, parent, students and taxpayers. This responsibility is the abdication of their role and inability to establish new forms of accountability for management services. Under the current system the organizational structure limits the innovation for which the state envisioned would improve student achievement beyond the brick and mortar concept of schooling. Consequently, the claim is based solely on the misrepresentations and misinterpretations, not on the actual performance of the service provided to the state, but the refusal to identify the reasons for failure. Nothing in the arbitration provision, which Defendant drafts, mentions claims arising from misrepresentations or omissions by Defendants. Had they wanted the arbitration provision to cover such claims, they would have drafted the arbitration provision accordingly. They did not. Their Motion should therefore be denied.

## CERTIFICATE OF SERVICE

This is to certify that a copy has been sent by ordinary United States certified Mail this February 20, 2018 to

Eva C. Madison
The Fulbright Building
217 E. Dickson Street, Suite 204
Fayetteville, AR 72701
(emadison@littler.com)
Defendant K12 Inc. Attorney

_____        February 20, 2018
Plaintiff, Pro Se (Signature)       Date
814 Carbon Avenue
Hartshorne, OK 74545
918-297-2891
egk0624@excite.com