**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) EDDIE M. KELLY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | No. 6:17-cv-00453-RAW |
| (1) K12 INC., | § | |
| (2) OKLAHOMA VIRTUAL CHARTER | § | |
| ACADEMY, | § | |
| (3) AUDRA PLUMMER, and | § | |
| (4) NICOLE ELLISON, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS AUDRA PLUMMER AND NICOLE ELLISON'S MOTION TO DISMISS
AND OPENING BRIEF IN SUPPORT**

Defendants Audra Plummer and Nicole Ellison move the Court, pursuant to Rule 12(b)(6) and 12(b)(5) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Complaint against them for failure to state a claim upon which relief can be granted and for insufficient service of process. Ms. Plummer and Ms. Ellison should be dismissed because individual supervisors are not subject to liability under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, or the Oklahoma Anti-Discrimination Act, and Plaintiff has otherwise failed to state claims under the Civil Rights Act of 1866 or the Oklahoma Governmental Tort Claims Act. Plaintiff's Complaint against Ms. Plummer and Ms. Ellison should also be dismissed because the attempted service did not comply with the requirements of Rule 4. Alternatively, any claims that could possibly remain should be referred to arbitration, along with Plaintiff's claims against Defendant K12 Inc.

## I.  FACTUAL BACKGROUND

Plaintiff Eddie M. Kelly filed her Complaint for Employment Discrimination against Defendants K12 Inc., Audra Plummer, Nicole Ellison, and Oklahoma Virtual Charter Academy on December 11, 2017.  She alleges claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. §§ 1981, 1982, and 1983, the Oklahoma Governmental Tort Claims Act, and the Oklahoma Anti-Discrimination Act ("OADA").  *See* Complaint (Doc. No. 2), p. 3.

Specifically, Plaintiff alleges race and age discrimination in the termination of her employment, unequal terms and conditions of employment, and retaliation.  *Id.*, p. 4, ¶ IIIA, D. She alleges that Defendant K12 hired her as a teacher, that she was treated differently based on her age and race, and that after she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), she was subjected to retaliation and ultimately terminated. *See generally* Doc. No. 2-1.

Ms. Plummer and Ms. Ellison are employees of K12.  *Id.*, p. 1, ¶ 1.  K12 is a for-profit, online education management company.  *Id.*  It is a private corporation, and its stock is traded on the New York Stock Exchange.  *See* Doc. No. 18.

On February 20, 2018, the United States Marshals Service filed Process Receipt and Return documents for Ms. Plummer and Ms. Ellison.  *See* Doc. Nos. 23-24.  The documents indicate that service was attempted in Midwest City, Oklahoma, on February 1, 2018, through Courtney Love, "who is designated by law to accept service of process on behalf of OK Virtual Charter Academy."  *Id.*  Oklahoma Virtual Charter Academy is a separate defendant in this case, and the Marshals Service filed a separate Process Receipt and Return document for it showing

service in an identical fashion.  *See* Doc. No. 25.  On these facts, dismissal is proper under both Rule 12(b)(6) and 12(b)(5).

## II.  AUTHORITIES AND ANALYSIS

### A.      Failure to State a Claim Upon Which Relief Can Be Granted

Ms. Plummer and Ms. Ellison, as individuals, have no liability under the employment discrimination statutes at issue in Plaintiff's Complaint.  Moreover, Plaintiff has failed to plead any facts indicating Ms. Plummer and Ms. Ellison should be held individually liable for race discrimination under 42 U.S.C. § 1981, she alleges no discrimination with respect to property rights to show a claim under 42 U.S.C. § 1982, and she has alleged no governmental action that would implicate 42 U.S.C. § 1983 or the Oklahoma Governmental Tort Claims Act.  Ms. Plummer and Ms. Ellison should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

#### 1.      *Standard of Review*

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *Alvarado v. KOB–TV*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).  The key test in the analysis is "whether the complaint contains enough facts to state a claim for relief that is plausible on its face."  *The Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  Accordingly, the plaintiff must allege facts sufficient to "nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss."  *Id.* (internal quotations omitted).  This

requires "more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Twombly*, 555 U.S. at 557.

Moreover, although the Court must accept all well-pleaded allegations as true, the Court "should not assume that the plaintiff can prove facts he has not alleged or that a defendant has violated laws in manners not alleged." *Yeahquo v. City of Lawrence*, 2007 U.S. Dist. LEXIS 81341, at *3 (D. Kan. Nov. 1, 2007) (citing *Assoc. Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)).  Nor will "conclusory allegations without supporting factual averments" or "legal conclusions disguised as factual allegations" suffice to stave off dismissal.  *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991).  Thus, if the complaint fails to set forth facts in "support [of] a plaintiff's claim sufficient to justify providing relief," the Court should order dismissal.  *Kinchion v. Cessna Aircraft Co.*, 504 F. Supp. 2d 1137, 1142 (D. Kan. 2007).

### 2.      *Individual Supervisor Liability under Title VII*

The basic prohibitions of Title VII are phrased in terms of "employers."  *See* 42 U.S.C. §§ 2000e-2(a), 2000e-3(a); *see also* 42 U.S.C. § 2000e(b) (defining "employer" to mean "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person").  The Tenth Circuit has held that the term "employer" does not encompass individual supervisors and "supervisors and other employees may not be held personally liable under Title VII." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1083 n.1 (10th Cir. 2007); *see also Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996); *Carey v. Avis Budget Car Rental, LLC*, No. 13-CV-0326-CVE-FHM, 2013 U.S. Dist. LEXIS 152148, at *11

-4-

(N.D. Okla. Oct. 23, 2013).  Consequently, Plaintiff cannot maintain a cause of action against Ms. Plummer or Ms. Ellison individually under Title VII.

### 2.    *Individual Supervisor Liability under the Age Discrimination in Employment Act*

The ADEA defines employer in a manner substantially identical to the definition in Title VII.  *See* 29 U.S.C. § 630(b) (defining "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . The term also means . . . any agent of such a person . . . .").  Following its logic in *Haynes*, the Tenth Circuit has said that the ADEA does not extend liability to individual supervisors.  *See Butler v. City of Prairie Vill.*, 172 F.3d 736, 744 (10th Cir. 1999); *see also Birkbeck v. Marvel Lighting Co.*, 30 F.3d 507, 510-11 (4th Cir. 1994); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) (affirming dismissal of Title VII and ADEA claims against individual employees, and asserting that "[i]f Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.").  Federal courts in Oklahoma have reached the same conclusion.  *See, e.g., Carey*, 2013 U.S. Dist. LEXIS 152148, at *12 ("[I]ndividuals may not be held personally liable under the ADEA.").  As such, the ADEA claims against the individual defendants should be dismissed.

### 3.    *Individual Supervisor Liability under the OADA*

The Oklahoma courts have likewise held that there is no individual liability under the OADA.  *See Peters v. Black Tie Value Parking Service, Inc.*, No. CIV-12-809-D, 2013 U.S. Dist. LEXIS 5203, 2013 WL 149773, at *2 (W.D. Okla. Jan. 14, 2013) (stating that "[i]ndividual or supervisory liability is also not available under the OADA") (citing *Fulton v. People Lease Corp.*, 2010 OK CIV APP 84, ¶ 18, 241 P.3d 255, 261) ("We conclude the Legislature did not

intend to make individual employees personally liable for discrimination actions brought under the OADA.")). Thus, Ms. Plummer and Ms. Ellison are not proper defendants under the OADA.

### 4. *The Civil Rights Act of 1866 has no application here.*

Plaintiff also alleges claims under 42 U.S.C. §§ 1981, 1982, and 1983, but she alleges no facts to support her claims against Ms. Plummer and Ms. Ellison.

Sections 1982 and 1983 have no application here. Section 1982 prohibits race discrimination in the sale and rental of property, *Jackson v. Park Place Condos. Ass'n, Inc.*, 619 Fed. App'x 699, 703 (10th Cir. 2015), and section 1983 requires state action. *See Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996) ("In order to hold a private individual liable under 1983 . . . , a plaintiff must show . . . that the individual's conduct is 'fairly attributable to the State.'"). Plaintiff's Complaint does not allege the sale or rental of property or that the conduct of Ms. Plummer or Ms. Ellison, who are employees of a private corporation, should be deemed state action, so those claims must be dismissed.

With respect to section 1981, "[a] claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement. There must be some affirmative link to causally connect the actor with the discriminatory action." *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991) (citations omitted). Plaintiff mentions Ms. Plummer and Ms. Ellison only a few times in her Complaint and makes only conclusory allegations of discrimination by either of them. She faults the individuals for not providing her a methodology for verbal communication with students, Doc. No. 2-1, p. 1, § 3, for allegedly violating an unspecified federal statute in denying training and advancement opportunities, *id.*, p. 2, ¶ 5, and for refusing to share information with her about a parent complaint, *id.*, p. 2, ¶ 3, but none of this involves discriminatory conduct. The closest Plaintiff comes to even hinting at discrimination by the individual defendants is her allegation that Ms. Ellison "made racist comments questioning

Plaintiff about her credentials, age, where she learned to teach and topics unrelated to the valuation conference." *Id.*, p. 2, ¶ 6. This type of conclusory allegation of unspecified "racist" comments is exactly what the Supreme Court has directed District Courts to ignore. *See, e.g., Heard v. Hannah*, 51 F. Supp. 3d 1129, 1143 (N.D. Ala. 2014) (assertion that discharge was based on "the Sheriff's racist disposition and unfavorable views towards African American employees in his department" inadequate and "not entitled to 'the presumption of truth' in connection with a Rule 12(b)(6) motion"); *Toles v. City of Janesville*, No. 12-cv-677-bbc, 2012 U.S. Dist. LEXIS 177817, at *5 (W.D. Wis. Dec. 17, 2012) (bare allegation of "racist" conduct without explanation for why it was racist not adequate under pleading standards).

Plaintiff generally alleges racially differential treatment, but she fails to causally link Ms. Ellison and Ms. Plummer with any alleged discrimination, as required under section 1981. Moreover, Plaintiff's generic allegations of differential treatment lack any factual support, *see, e.g., id.*, p. 4, ¶ 12 (alleging that the "rules of performance appraisals" were applied differently to "other White teachers paid with federal funds"), and they are inadequate under the Tenth Circuit's standards. *See Hwang v. Kan. State Univ.*, 753 F.3d 1159, 1164 (10th Cir. 2014) ("Ms. Hwang's complaint says she's 'similarly situated' to employees who get sabbaticals. But that's just a legal conclusion — and a legal conclusion is never enough. While plaintiffs don't have to incant any particular litany of facts to support a claim of differential treatment, they ***do*** have to allege some set of facts that taken together plausibly suggest differential treatment of similarly situated employees.") (emphasis in original); *Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012) ("There are no allegations of similarly situated employees who were treated differently."). Under these standards, Plaintiff's 1981 claims against the individuals are inadequate.

5.     *The Oklahoma Governmental Tort Claims Act does not apply.*

Plaintiff claims a violation of the Oklahoma Governmental Tort Claims Act, but fails to specify any violation of the Act.  The Act, by definition, applies to the State of Oklahoma and its political subdivisions and pertains to sovereign immunity for torts committed by their employees.  *See* 51 Okla. Stat. § 153.  Plaintiff has offered no facts to support a claim under the Act against Ms. Plummer or Ms. Ellison, who are employees of a private corporation, and she makes no allegations that would connect them to the State or its political subdivisions.   Her claims against them therefore fail.

B.     **Insufficient Service of Process**

Upon motion by a defendant, a court may dismiss an action for insufficiency of service of process.  *See* Fed. R. Civ. P. 12(b)(5).

> Service of process "provides the mechanism" for the court to "assert[ ] jurisdiction over the person of the party served."  Proper "[e]ffectuation of service is a precondition to suit . . . ."  It is Plaintiff who "bear[s] the burden of demonstrating that the court has personal jurisdiction over the parties, including valid service of process."

*Silverman v. Prisoner Transp. Servs. of Am., LLC (PTS)*, No. CIV-15-1093-F, 2016 U.S. Dist. LEXIS 78689, at *12-13 (W.D. Okla. Apr. 26, 2016) (citations omitted) (quoting *Okla. Radio Assocs. v. FDIC*, 969 F.2d 940, 943 (10th Cir. 1992); *Jenkins v. City of Topeka*, 136 F.3d 1274, 1276 (10th Cir. 1998); *Habyarimana v. Kagame*, 821 F. Supp. 2d 1244, 1252 (W.D. Okla. 2011), *aff'd*, 696 F.3d 1029 (10th Cir. 2012)).

Rule 4(e) of the Federal Rules of Civil Procedure governs service of process upon individuals in the United States and provides that service may be accomplished by either (1) delivering a copy of the summons and complaint to the defendant personally or to a person of suitable age and discretion then residing at the defendant's dwelling or usual place of abode or (2) delivering a copy of the summons and complaint to an agent authorized by appointment or by

law to receive service of process.  Fed. R. Civ. P. 4(e)(2).  Rule 4(e) also provides that service of process may be accomplished pursuant to state law.  Oklahoma's requirements for service of process are virtually identical to the requirements of Rule 4(e)(2).  *See* 12 Okla. Stat. § 2004(C)(1)(c)(1).

Here, Plaintiff did not personally serve the summonses and copies of the Complaint on Ms. Plummer and Ms. Ellison, and she did not she attempt to leave the service documents with a person of suitable age and discretion at their homes.  Rather, Plaintiff attempted to effect service by directing the U.S. Marshal to Ms. Plummer's and Ms. Ellison's alleged place of employment in Midwest City, Oklahoma.[1]  Service at a defendant's place of employment or business does not, however, qualify under Rule 4(e)(2).  *See, e.g., Kircher v.Ypsilanti*, No. 05-73425, 2006 U.S. Dist. LEXIS 72312, at *4 (E.D. Mich. Oct. 4, 2006); 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1096, at 522 (3d ed. 2002); *Graff v. Kelly*, 1991 OK 71, ¶ 12, 814 P.2d 489, 493 ("A defendant's regular place of business is not the same as his dwelling house or usual place of abode.").  Furthermore, the service documents were left with an individual named Courtney Love, who is alleged not to be the service designee for either Ms. Plummer or Ms. Ellison, but is identified as the agent for Oklahoma Virtual Charter Academy, a separate defendant in the case.  *See* Doc. Nos. 23-24.  As such, Plaintiff failed to properly serve Ms. Plummer and Ms. Ellison, and her Complaint against them should therefore be dismissed. *See Graff*, 1991 OK 71, ¶ 1, 814 P.2d at 490 (holding that service of process is not valid when

---

[1] Plaintiff's Complaint provides the same business address in Midwest City for Oklahoma Virtual Charter Academy, Ms. Plummer, and Ms. Ellison.  *See* Doc. No. 2, pp. 2-3.

the process server serves the summons upon an employee, not the defendant, at that defendant's place of employment).[2]

###### C.    **Alternatively, Plaintiff's claims belong in arbitration.**

To the extent the Court does not dismiss all of Plaintiff's claims, Ms. Ellison and Ms. Plummer join in, and incorporate by reference, K12's motion to dismiss and compel arbitration. Any claims against them that could possibly remain are so intertwined with Plaintiff's claims against K12 that they should also be heard in the arbitral forum.

The primary purpose of the FAA is to enforce arbitration agreements in accordance with their terms. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). As the United States Supreme Court reiterated in 2008, it "is certainly right that the FAA lets parties tailor some, even many features of arbitration by contract, including the way arbitrators are chosen, what their qualifications should be, which issues are arbitrable, along with procedure and choice of substantive law." *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008).

Here, the terms of the agreement expressly require Plaintiff to arbitrate claims that arise from or relate to her employment or the termination of her employment, including, in particular, claims of employment discrimination. The agreement must be enforced as written. *Rent-A-Center*, 561 U.S. at 67; *Hall Street Assocs.*, 552 U.S. at 586. Moreover, in the context of an arbitration agreement, it is well settled that "as with any other contract, the parties' intentions

---

[2] This is not the first service issue in the case. Defendant K12 Inc. did not receive a summons, even though the docket reflects that one was issued. Instead, K12 received the summonses for the other three defendants, which it then returned to the U.S. Marshals Service. K12's counsel advised the Marshals Service of the service defect, but corrected service was not made. K12 opted not to challenge service in light of its motion to compel arbitration.

control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi*

*Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985).

This is not a novel issue.  Non-signatories may enforce arbitration agreements, and the

Supreme Court has recognized this in rejecting arguments to the contrary:

> Respondents argue that, as a matter of federal law, claims to arbitration by
> nonparties are not "referable to arbitration *under* an agreement in writing," 9
> U.S.C. § 3 (emphasis added), because they "seek to bind a signatory to an arbitral
> obligation *beyond* that signatory's strictly contractual obligation to arbitrate,"
> Brief for Respondents 26.  Perhaps that would be true if § 3 mandated stays only
> for disputes between parties to a written arbitration agreement.  But that is not
> what the statute says.  It says that stays are required if the claims are "referable to
> arbitration under an agreement in writing."   If a written arbitration provision is
> made enforceable against (or for the benefit of) a third party under state contract
> law, the statute's terms are fulfilled.

*Arthur Andersen, LLP v. Carlisle,* 556 U.S. 624, 631 (2009) (emphasis in original).  Likewise,

the Tenth Circuit has recognized that a nonsignatory can enforce an arbitration clause against a

signatory to the agreement.  *Gibson v. Wal-Mart Stores, Inc.*, 181 F.3d 1163, 1170 (10th Cir.

1999).  One of those situations is under a theory of equitable estoppel.  *See Glob. Client Sols.,*

*LLC v. Fluid Trade, Inc.*, No. 10-CV-0123-CVE-TLW, 2010 U.S. Dist. LEXIS 65839, at *24

(N.D. Okla. July 1, 2010).  The Eleventh Circuit explained the theory in *MS Dealer Service*

*Corp. v. Franklin*:

> [E]quitable estoppel allows a nonsignatory to compel arbitration in two different
> circumstances.  First, equitable estoppel applies when the signatory to a written
> agreement containing an arbitration clause "must rely on the terms of the written
> agreement in asserting [its] claims" against the nonsignatory.  When each of a
> signatory's claims against a nonsignatory "makes reference to" or "presumes the
> existence of" the written agreement, the signatory's claims "arise[ ] out of and
> relate[ ] directly to the [written] agreement," and arbitration is appropriate.
> ***Second, "application of equitable estoppel is warranted . . . when the signatory
> [to the contract containing the arbitration clause] raises allegations of . . .
> substantially interdependent and concerted misconduct by both the
> nonsignatory and one or more of the signatories to the contract."  Otherwise,
> "the arbitration proceedings [between the two signatories] would be rendered
> meaningless and the federal policy in favor of arbitration effectively thwarted."***

-11-

177 F.3d 942, 947 (11th Cir. 1999) (citations omitted) (emphasis added); *see also Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000) (discussing and collecting cases); *Maldonado v. Mattress Firm, Inc.*, No. 8:13-cv-292-T-33AEP, 2013 U.S. Dist. LEXIS 77649 (M.D. Fla. June 3, 2013) ("[A]lthough 'arbitration is a contractual right, the lack of a written arbitration agreement between the parties is not always an impediment to compelling arbitration.'").  It is logical to apply this theory when a plaintiff brings intertwined claims against her employer and individual supervisors of that employer.  *See Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993) ("Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."); *Letizia v. Prudential Bache Secur., Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986) (concluding arbitration clause was applicable to individual nonsignatory employee-defendants because their "allegedly wrongful acts" arose out of their work for the signatory employer).  Ms. Plummer and Ms. Ellison are also third-party beneficiaries to the Agreement to Arbitrate.  Courts have recognized that a party cannot circumvent a promise to arbitrate by simply naming nonsignatory parties as defendants in his complaint because "the effect of the rule requiring arbitration would, in effect, be nullified" by such an action.  *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990).  Thus, any claims against Ms. Plummer and Ms. Ellison that are not dismissed should be referred to arbitration.

### III.  CONCLUSION

For the reasons stated herein, Plaintiff has failed to plead any valid claim against Ms. Plummer or Ms. Ellison, and her claims against them should be dismissed pursuant to Rule 12(b)(6).  Alternatively, she has failed to effect proper service of process on them, and her claims should be dismissed pursuant to Rule 12(b)(5).  If any claims possibly remain, they should be

referred to arbitration, consistent with Defendant K12 Inc.'s pending motion to dismiss and to compel arbitration.

/s/ Eva C. Madison
Eva C. Madison (OBA#18103)
Littler Mendelson, P.C.
217 E. Dickson St., Suite 204
Fayetteville, Arkansas 72701
Telephone:  479.582.6100
Fax:  479.582.6111
emadison@littler.com

Attorney for Defendants Audra Plummer
and Nicole Ellison

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2018, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

[None]

I further certify that on this same date, I mailed the foregoing document by United States Postal Service to the following non CM/ECF participant:

Eddie M. Kelly, *Pro Se*
814 Carbon Ave.
Hartshorne, OK 74547

/s/ Eva C. Madison

Firmwide:153031290.1 086388.1003

-13-